IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, ROBERT HOOVER, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, CHARLES COSTELLA, and WILLIAM MCCONNELL as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>and<br><br>JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>Plaintiffs,<br><br>v.<br><br>CONVENTIONAL STONE SERVICES CORP.<br>1540 W. Elizabeth Avenue<br>Linden, NJ 07036,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br>Civil Action No: |

## **COMPLAINT**

2452488

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION
### Jurisdiction and Venue

1.  This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145.  Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2.  The IPF and IMI are administered in the District of Columbia.  Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

### Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero, Charles Costella, and William McConnell are

2

Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.    The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.    Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.    Defendant, Conventional Stone Services Corp ("Conventional Stone" or "Defendant") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New Jersey.

3

2452488

7.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

### Violation Charged

8.    Conventional Stone Services Corp. acting through its authorized agents or officers, executed a collective bargaining agreement with the Union.  The collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement."

9.    Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF and IMI for covered work performed by employees of Defendant.

10.    Having submitted some contributions, Conventional Stone has demonstrated an awareness of the obligation to make those payments.

11.    Conventional Stone has failed to properly submit required reports and contributions for work performed during the months of January 2007 through April 2008.

12.    A Recap prepared by the IPF based on Employer Reports submitted to the Fund by Conventional Stone revealed that Conventional Stone owes $61,479.65 in contributions to the IPF and IMI for work performed during the months of January 2007 through April 2008.

13.    Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $3,791.07, calculated at 15 percent per annum from the Due Date and liquidated damages in the amount of $10,085.75, calculated at the rate of 20 percent, have been assessed on such delinquent contributions determined due by the audit.

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of Conventional Stone

4

Services' failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For the total amount of $75,706.47, which is constituted as follows:

   a. For unpaid contributions in the amount of $61,479.65 payable to the IPF and IMI for the time period January 2007 through April 2008, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); Collection Procedures);

   b. For interest in the amount of $3,791.07 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

   c. For liquidated damages in the amount of $10,085.75 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(ii); Collection Procedures);

   d. For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

2. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

3. That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

2452488

4.  Such other relief as this Court deems appropriate, including judgment for any contributions and interest thereon that may accrue subsequent to the filing of this Complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: June ____12____, 2008          By: _____

Ira R. Mitzner, DC Bar No. 184564
Charles V. Mehler III, DC Bar No. 475909
 DICKSTEIN SHAPIRO LLP
 1825 Eye Street, NW
 Washington, DC  20006-5403
 (202) 420-2200

Attorneys for Plaintiffs

6

2452488



NY 059

TRADE AGREEMENT
*between*

_____

*and*

LOCAL NO. 1 NEW YORK
OF THE
INTERNATIONAL UNION OF
BRICKLAYERS AND ALLIED
CRAFT WORKERS

*Effective on and after*
JULY 1, 2005
TO
JUNE 30, 2008

This is a copy printed from the IUBAC Document Management System.

# TABLE OF CONTENTS

NY 0595

ARTICLE I: RECOGNITION
Section 1.  Recognition . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Section 2.  Work Outside of Area. . . . . . . . . . . . . . . . . . . 2
Section 3.  Prohibition on work for Non-Signatory . . . . . . 3

ARTICLE II: HOURS
Section 1.  Regular Hours and Overtime . . . . . . . . . . . . . 3
Section 2.  Saturdays, Sundays and Holidays, etc. . . . . . . 4
Section 3.  Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Section 4.  Make-Up Time . . . . . . . . . . . . . . . . . . . . . . . 5
Section 5.  Employment By Others . . . . . . . . . . . . . . . . . 7
Section 6.  Emergencies . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARTICLE III: WAGES, LOCAL AND INTERNATIONAL UNION
WORKING DUES CHECK-OFF, CONTRIBUTIONS TO
BRICKLAYERS FRINGE BENEFIT FUNDS AND INDUSTRY FUNDS
Section 1.  Wages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Section 2.  Overtime . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Section 3.  Working Dues Check-off . . . . . . . . . . . . . . . . 10
Section 4.  Welfare Fund . . . . . . . . . . . . . . . . . . . . . . . . 11
Section 5.  Pension Fund . . . . . . . . . . . . . . . . . . . . . . . . 12
Section 6.  Supplemental Annuity Fund. . . . . . . . . . . . . . 13
Section 7  Vacation Fund. . . . . . . . . . . . . . . . . . . . . . . . . 14
Section 8.  Industry Funds . . . . . . . . . . . . . . . . . . . . . . . 14

i



R E C E I V E D

NOV 2 1 2007

COLLECTIVE BARGAINING
SERVICES

Section 9. Fringe Benefits Administration . . . . . . . . . . 15
Section 10. Delinquency Committee . . . . . . . . . . . . . . . 23
Section 11. Payment of Wages . . . . . . . . . . . . . . . . . . . . . 23

ARTICLE IV: CONDITION OF EMPLOYMENT
Section 1. Job Site Conditions . . . . . . . . . . . . . . . . . . . 29
Section 2. Tools . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Section 3. Elevator . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
Section 4. Identification . . . . . . . . . . . . . . . . . . . . . . . . 33
Section 5. Rebates Employers . . . . . . . . . . . . . . . . . . . . 33
Section 6. Laws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Section 7. Union Notification, Union Security, and
            Referrals . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

ARTICLE V: STRIKES AND LOCKOUTS . . . . . . . . . . . . . . . . 35

ARTICLE VI: UNION RELATIONSHIP
Section 1. Shop Steward . . . . . . . . . . . . . . . . . . . . . . . . 36
Section 2. Job Site Visits . . . . . . . . . . . . . . . . . . . . . . . . 37
Section 3. Persons in Charge . . . . . . . . . . . . . . . . . . . . . 37
Section 4. Employment . . . . . . . . . . . . . . . . . . . . . . . . . 39
Section 5. Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Section 6. Preference . . . . . . . . . . . . . . . . . . . . . . . . . . 40
Section 7. Apprentices . . . . . . . . . . . . . . . . . . . . . . . . . 40
Section 8. Labor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

ARTICLE VII: WORK INCLUDED
Section 1. Construction . . . . . . . . . . . . . . . . . . . . . . . . . 42
Section 2. Cutting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
Section 3. Panelization . . . . . . . . . . . . . . . . . . . . . . . . . 50
Section 4. Contracting . . . . . . . . . . . . . . . . . . . . . . . . . 52

ARTICLE VIII. MISCELLANEOUS
Section 1. Severabiltiy . . . . . . . . . . . . . . . . . . . . . . . . . 54
Section 2. Six Hour Day . . . . . . . . . . . . . . . . . . . . . . . . 55
Section 3. Coverage of Agreement . . . . . . . . . . . . . . . . 55
Section 4. Work Preservation . . . . . . . . . . . . . . . . . . . . 55
Section 5. Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57
Section 6. Retroactivity . . . . . . . . . . . . . . . . . . . . . . . . 57
Section 7. Supercession . . . . . . . . . . . . . . . . . . . . . . . . 57
Section 8. Successors . . . . . . . . . . . . . . . . . . . . . . . . . . 57

ARTICLE IX. ARBITRATION
Section 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

ARTICLE X. RENEWAL
Section 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
Section 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

ARTICLE XI. SIGNATURE . . . . . . . . . . . . . . . . . . . . . . . . . 60

NY 0595

This is a copy printed from the IUBAC Document Management System.

NY 0698

# AGREEMENT

This agreement is entered into by and between the Undersigned Employer of Bricklayers ("Employer") on its own behalf, and Local No. 1, New York, International Union of Bricklayers and Allied Craftworkers ("BAC") (hereafter "Union"). The provisions of this Agreement are effective on and after July 1, 2005 and terminate June 30, 2008.

## ARTICLE I
### *Recognition*

**Section 1. Recognition**

A. This Agreement is effective in the region of New York City and all of Long Island in the State of New York. The Union is hereby recognized as the exclusive Collective Bargaining Agent of all Bricklayers employed by the Employer parties to this Agreement. The term "Bricklayer" includes, without limitation, all persons employed on work specified in Article VII hereof.

B. Inasmuch as (1) the Union has requested recognition as the majority, Section 9(a) representative of the Employees in the bargaining unit described herein and (2) has submitted or offered to show proof of its majority support by those Employees, and (3) the Employer is satisfied that the Union represents a majority of the bargaining unit employees, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective

1

This is a copy printed from the IUBAC Document Management System.

bargaining agent for all employees within that bargaining unit, on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

**Section 2. Work Outside of Area**

When the Employer has any work specified in this Agreement to be performed outside of the area covered by this Agreement and within the area covered by the standard agreement of another affiliate of the BAC, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect in the job site area with respect to both traveling employees and employees hired in the job site area. Employees covered by this Agreement who are sent to projects outside the area covered by this Agreement shall be paid at least the established minimum wage scale specified in this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the job site local Agreement. The Employer shall in all other matters be governed by the provisions established in the job site local Agreement. If employees are sent back to work on a project in an area where there is no local Agreement covering the work speci-

2

fied in this Agreement, the full terms and conditions of this Agreement shall apply.

**Section 3. Prohibition on Work for Non-Signatory**

No Bricklayers shall work for anyone who is not a signatory, or a member of an Association which is not a signatory, to an agreement to comply with all rules and regulations and to pay wages and contributions.

## ARTICLE II
### Hours

**Section 1. Regular Hours and Overtime**

A. Regular hours of labor are from 8 A.M. to 4 P.M. exclusive of the noon hour. It is optional for the Employer and Union to mutually agree to reduce the lunch hour by one-half (½) hour in which event, the work day shall end at 3:30 P.M. An earlier than 8:00 A.M. starting time may be scheduled, upon mutual consent of the Union and employer. Once the starting time for a job has been scheduled, it shall not be changed for the duration of the job except by mutual consent of the Employer and the Union. If the scheduled starting is changed by mutual consent, the scheduled quitting time shall be seven (7) working hours after the new scheduled starting time. Agreed upon overtime will be paid for all time worked after the scheduled quitting time, at the rate of time and one-half with respect to wages and at straight time with

3

respect to contributions to Bricklayers Fringe Benefit Funds ("Overtime Rates"). All hours worked after scheduled quitting time shall be at Overtime Rates.

B. The Employer has the right to schedule an eighth (8th) hour of work at Overtime Rates without procuring permission of the Union, provided all employees employed by the Employer work such eighth (8th) hour of work at Overtime Rates and provided further that reasonable notice is given to such employees.

### Section 2. Saturdays, Sundays and Holidays, etc.

There shall be no work on Saturday or Sunday. Also there shall be no work on New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, as these are recognized holidays. If a holiday falls on a Sunday, it will be celebrated on such day as is observed by the State of New York.

### Section 3. Exceptions

A. Bricklayers may work on days excepted in Section 2 hereof, or outside regular hours on work that cannot be done during regular hours with safety or without serious inconvenience to others. The Employer and Bricklayers must obtain written permission from the Local 1 President for each case of this nature. The Employer shall pay for all such time worked at Overtime Rates. Nothing in this Section

shall supersede any provision of Section 1 hereof or Article III, Section 2 hereof.

B. Where work cannot be performed during the regular working day, then the Employer may schedule work to be performed outside the normal work period and pay the employees eight hours at the straight time rate, including fringe benefits, for seven hours of work subject to the following conditions: this alternative starting time may be utilized only when there exist extenuating circumstances beyond the control of the contractor and upon permission of the President of the Union, which permission shall not be unreasonably withheld. Any work in excess of seven hours shall be paid at the rate of time and a half.

### Section 4. Make-Up Time

A. Where time is lost due to circumstances beyond the control of the Employer, there shall be an eighth (8th) hour of makeup time during the week days at straight time rates, but only up to a maximum of thirty-five hours per week. Any work over thirty-five hours shall be paid at the overtime rate.

.B. The Employer shall be entitled to Saturday makeup day throughout the year. Hours lost during the work week, Monday through Friday, shall be aggregated and the number of hours, up to a maximum of 35 hours per week, may be worked on Saturday at straight time rates. The employees shall be entitled to a full day's work on Saturday, and hours

4

5

above the 35 hours for that week shall be at the overtime rate.

C. To avail itself or make up time and/or the Saturday make-up day, the Employer must provide the Union President or, in his absence, the Union Secretary-Treasurer, with advance notice of its intent to have employees work the makeup time and/or the Saturday make-up day, and the Union President or Secretary-Treasurer, as the case may be, must approve the request.

D. If the Employer's collective bargaining agreement with the labor organization representing the employees tending and otherwise supporting the bricklayers, ("the support personnel") does not permit the support personnel to work a Saturday make-up day at straight-time rates, then the Union will supply employees to perform all tasks and functions which the support personnel normally perform. Such employees supplied by the Union shall receive a pay and fringe benefits package at the rate then being received by support personnel represented by the Union.

E. No employee shall be required to work on Saturday, or the 8th hour during weekdays, and no employee shall be subject to discipline, retaliation of any kind or penalty for failure to do so. Employees regularly on the particular job shall have first preference for Saturday makeup day, then the Employer shall be entitled to hire other employees to perform the work.

6

F. Where the Employee misses a day of work because of his own individual absence and not because of circumstances beyond the Employer's control, he shall receive pay at the rate of time and one-half if he works that Saturday. If work is being performed at the overtime rate on a Saturday, the Employer cannot deprive such Employee of that opportunity because he has missed one or more days during the work week.

G. The number of employees working on a Saturday makeup day shall not exceed the number scheduled to work on the weekday or weekdays on which time is lost because of circumstances beyond the Employer's control.

H. If on a given weekday, a portion of the crew assigned to work that day does perform work and another portion of the crew is unable to work due to circumstances beyond the Employer's control, only the number of employees who are unable to work that day are subject to the makeup day. If the employer hires more than that number for Saturday work, then all employees working that Saturday shall be paid at the rate of time and one-half.

## Section 5. Employment By Others

No Employer shall knowingly permit any Bricklayer to work for any time, which, when added to the time spent at work for another Employer, or otherwise, exceeds the maximum permitted herein, nor shall any Bricklayers so work.

7

This is a copy printed from the IUBAC Document Management System.

## Section 6. Emergencies

The provisions as to hours are not effective in cases involving danger to life or property provided Article III, Section 2, is complied with.

# ARTICLE III

### *Wages, Local and International Union Working Dues Check-Off, Contributions to Bricklayers Fringe Benefit Funds and Industry Funds*

## Section 1. Wages

A. Effective July 1, 2005 the wage package (including fringe benefit contributions) shall be increased by $2.23 per hour to $60.97 per hour, the new wage rate being $41.20 per hour (which includes dues check-offs, PAC and vacation fund contribution in a total amount of $3.54). Wages and contributions to the Bricklayers Fringe Benefit Funds and Industry Funds shall be further increased during the term of this agreement as follows:

| Effective Date | Amount of increase per hour |
|---|---|
| 7/1/06 | $2.25 |
| 7/1/07 | $2.59 |

The Union shall be entitled, in its sole and absolute discretion, to allocate and reallocate the foregoing increases, or any portion thereof, to wages or to any of the Bricklayers Fringe Benefits Funds or Industry Funds.

B. If during the term of his Agreement, wage controls are enacted in any form and any portion of wages are deferred, deleted or cut back, the parties shall reallocate the money into Bricklayers Fringe Benefit Funds to the extent permissible under law.

C. Whenever an hourly rate that is in excess of the wage rate provided for in Paragraph (a) of this Section is paid on any job to any Bricklayer, other than Foreman or Assistant Foreman (Deputies) who work with the tools, the highest hourly rate of wages paid to any Bricklayer who works with the tools on such job shall be the rate of wages for all Bricklayers on such job working with the tools, from the date such excess rate was paid to any such Bricklayer to the date of the completion of such job.

## Section 2. Overtime

All overtime including Saturdays shall be at time and one-half ($\frac{1}{2}$) wages, except any work performed on Sundays and Holidays, as specified in Article II, Section 2 hereof, shall be at double wages. Overtime means any time spent working outside regular hours or any work performed on the days excepted in Article II, Section 2 hereof. However, except as provided in Article II, Section 4, when an individual Bricklayer works over seven (7) hours in any twenty-four (24) hour period, the time after seven (7) hours shall be considered overtime and shall be paid at time and one-half ($\frac{1}{2}$) wages as provided in Article II, Section I hereof. Employers and Bricklayers must obtain writ-

8

9

ten permission from the President of Local 1 for each case of this nature except as provided in Article II, Section I (b).

## Section 3. Working Dues Check-off

A. Effective July 1, 2005, each employer agrees to deduct from the wages of all Bricklayers, working dues checkoff in an amount equal to one and two tenths (1.2%) percent of the gross wage package ($.73 per hour), Local Defense Fund contributions in the amount of $.12 per hour and Local PAC contributions in the amount of $.03 per hour, or such amount as the Union shall specify from time to time. Such working dues check-off must be added to the hourly wages for taxation and then deducted from the net wages (after taxes) of all bricklayers who authorize such deductions in writing, and shall be paid over to the Union not later than one (1) week after said deduction, together with the contributions to Bricklayers Fringe Benefit Funds. It is understood that the total package includes hourly wages, working dues check-off, contributions to Bricklayers Fringe Benefit Funds and industry funds.

B. Effective July 1, 2005, the Employer shall deduct from wages International Union working dues checkoffs of one percent (1%) of the wage package (including fringes) for each hour of employment ($.61 per hour), or such amount as the International Union shall specify from time to time, from the wages of each Bricklayer who has signed an assignment

conforming to federal law authorizing the deduction of such International Union working dues check-offs and shall transmit to the International Union the sums which the International Union has specified.

C. It is mutually agreed that the Bricklayer assignments authorizing the deduction of working dues check-off shall be in blanket form filed with the Union. The Union agrees to indemnify and hold harmless the Employer from any and all claims and/or actions arising out of such deductions providing that the working dues check-off have been paid over to the Union.

## Section 4. Welfare Fund

A. All Employers shall pay weekly the following contributions per hour for each hour of employment of Bricklayers within the territory of this Agreement for the pay period immediately preceding into the Bricklayers Insurance and Welfare Fund to be administered and expended by the Trustees pursuant to the provisions of the Agreement and Declaration of Trust as amended for the purposes of providing welfare benefits for eligible Bricklayers and eligible dependents as the Trustees may determine in their sole discretion.

July 1, 2005 ................................$5.68 per hour

B. Elected full time officers of the Union shall be considered participants in the Welfare Funds and shall be eligible

10

11

for all benefits, provided contributions are paid on their behalf as with any other Employer.

C. All other full time employees of the Local Union and all employees of the Bricklayers Fringe Benefit Funds may be participants in the Welfare Fund on the same conditions as other Bricklayers provided contributions are paid on their behalf as with any other Employer.

D. Each Employer shall provide disability insurance coverage for all Bricklayers employed by Employer to conform with the requirements of the New York State Disability Insurance Law.

### Section 5. Pension Fund

A. All Employers shall pay weekly the following contributions per hour for each hour of employment of Bricklayers, except Apprentices and Improvers, within the territory of the Agreement for the pay period immediately preceding into the Bricklayers Pension Fund. Such payments shall be made to the Trustees designated under the provisions of the Agreement and Declaration of Trust as amended creating the Pension Fund for the purpose of providing pension benefits for eligible Bricklayers.

July 1, 2005 ...................................$5.43 per hour

B. Effective July 1, 2005, all Employers shall pay $1.50 (one dollar fifty cents) per hour, including for Apprentices and Improvers, to the Trowel Trades International Pension Fund.

12

C. Required government approvals, if any, shall be obtained concerning deductibility as a business expense for tax purposes of all contributions to the Pension Fund made by Employers.

### Section 6. Supplemental Annuity Fund

A. All Employers shall pay weekly the following contributions per hour for each hour of employment of Bricklayers within the territory of this Agreement for the pay period immediately preceding into the Bricklayers Supplemental Annuity Fund. Such payments shall be made to the Trustees designated under the provisions of the Agreement and Declaration of Trust as amended creating the Supplemental Annuity Fund for the purpose of providing supplemental annuity benefits for eligible Bricklayers.

July 1, 2005 ...................................$6.00 per hour

B. Employer contributions for Apprentices and Improvers shall be $3.50 per hour for each hour of employment payable weekly for the pay period immediately preceding.

C. Elected full time officers and employees of the Union may participate in the Supplemental Annuity Fund provided the Union pays contributions to the fund on their behalf.

D. Required government approvals, if any, shall be obtained concerning deductibility as a business expense for tax purposes of all contributions made by Employers to the Supplemental Annuity Fund.

13

## Section 7. Vacation Fund

Effective July 1, 2005, each Employer shall deduct from the wages of all Bricklayers contributions to the Vacation Fund in the amount of $2.00 per hour and shall pay that amount weekly to the Trustees designated under the provisions of the Agreement and Declaration of Trust creating the Vacation Fund for the purpose of providing vacation benefits for eligible Bricklayers. Such Vacation contributions must be added to the hourly wages for taxation and then deducted from the net wages (after taxes).

## Section 8. Industry Funds

All Employers of Bricklayers shall during the term of the Agreement pay weekly:

A. Effective July 1, 2005 $1.15 per hour for each hour of employment of Bricklayers and apprentices and Improvers within the territory of this Agreement, for the pay period immediately preceding, to be allocated as follows:

B. Effective July 1, 2005, $.10 (ten cents) per hour to be paid to the Joint Apprenticeship and Training Fund.

C. Effective July 1, 2005, $.85 (eighty-five cents) per hour to be paid to the "International Masonry Institute."

D. Effective July 1, 2005 $.20 (twenty cents) per hour to be paid to the jointly administered New York City and Long Island Labor-Management Committee under § 302 (c) (9) of the LMRA.

14

## Section 9. Fringe Benefits Administration

A. Employer Bound By Agreements And Declaration of Trusts—The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these Funds pursuant to said Agreements and Declarations of Trusts.

B. Joint Administration of Funds—All Fringe Benefit Trust Funds (Pension, Welfare, Supplemental Annuity, Vacation and Industry Funds) shall be jointly administered by Trustees designated under the provisions of the existing Agreements and Declarations of Trust, as amended. Each Trust Fund shall bear its own cost of administration.

All amendments necessary to effectuate the foregoing shall be made in the trust documents.

C. Bricklayers Fringe Benefit Funds Audits, and Liquidated Damages—Payments by the Employer to Bricklayers Insurance and Welfare, Pension, Supplemental Annuity Funds, Vacation Fund, Trowel Trades International Pension Fund, New York City and Long Island Bricklayers Joint Apprenticeship and Training Fund, Bricklayers IMI, and the Labor Management Relations Committee (hereinafter Bricklayers Fringe Benefit Funds) shall be accompanied by Employer Remittance Reports furnished by Bricklayers Fringe Benefit Funds, containing such data as

15

This is a copy printed from the IUBAC Document Management System.

the Trustees may from time to time determine in their dis-
cretion to be necessary. The furnishing of timely Remittance
Reports to the Funds shall be an independent obligation of
the Employer whether or not timely payment accompanies
them. The books and records of the Employer shall be made
available at all reasonable times for inspection and audit by,
but not limited to, the accountant, outside independent audi-
tors or other representatives of the Trustees of any of
Bricklayers Fringe Benefit Funds. The Employer shall be
required to disclose upon such audits all payrolls and payroll
ledgers including office payrolls, yard payrolls, New York
payrolls, New Jersey payrolls, Computer payroll printouts,
W-2 forms, quarterly federal payroll tax returns (Form 941),
quarterly state payroll tax returns (Forms WRS-4 and WRS-
30), annual federal and state tax returns, cash disbursements,
journals, purchase journals, New York State Employment
records, insurance company reports, employer remittance
reports, payroll and supporting checks, ledgers, vouchers,
1099 forms; evidence of unemployment insurance; contribu-
tions; payroll tax deductions, disability insurance premiums;
certification of workers compensation coverage, checks in
support of any governmental filings or tax payments, remit-
tance reports and checks in support thereof, documents
showing the job location at which each employee was
employed, and any other documentation, concerning pay-
ment of fringe benefit contributions-for hours worked by

16

Bricklayers remitted to multi-employer fringe benefit funds
other that Bricklayers Fringe Benefit Funds described here-
in, and any other items concerning payrolls.

All documents produced and all information obtained in
the conduct of the audits of the books and records of
employers shall be deemed to have limited confidential sta-
tus insofar as the results of the audits of the books and
records of employers may only be utilized by the Trustees
consistent with their fiduciary duties and responsibilities to
effectively and efficiently facilitate the collection of contri-
butions to Bricklayers Fringe Benefit Funds, including inter
alia, the prosecution of lawsuits for audits and for the collec-
tion of delinquencies in contributions to Bricklayers Fringe
benefit Funds.

The Employer shall retain, for a minimum period of six
(6) years; payroll and related records necessary for the con-
duct of a proper audit in order that a designated representa-
tive of the Trustees may make periodic review to confirm
that contributions owed pursuant to this Agreement are paid
in full. In the event; after the Trustees have made a reason-
able request; the Employer fails to produce its books and
records necessary for a proper audit, the Trustees, in their
sole discretion, may determine that the Employer's monthly
hour subject to contributions for each month of the request-
ed audit period are the highest number of Bricklayer hours
for any month during the twelve preceding months audited,

17

This is a copy printed from the IUBAC Document Management System.

or during: the last twelve (12) months for which reports were filed, whichever monthly number of hours is greater. Such determination by the Trustees shall constitute presumptive evidence of delinquency. Prior to making such determination the Trustees shall mail a final seven (7) day written notice to the Employer advising him that such determination shall be made if the Employer does not schedule a prompt audit. Nothing herein shall mean that the Bricklayers Fringe Benefit Funds relinquish their right to commence legal proceedings to compel an examination of the Employer's books and records for audit.

When Auditors are sent to audit the books and records of the Employer pursuant to an appointment agreed to in writing and the auditor cannot start at the appointed time and date and must return because of the fault of the Employer or when complete payroll records required herein are not furnished due to the fault of the Employer, then the Employer shall pay the bona fide charges imposed by the auditor.

It shall be a violation of this Agreement for any Employer to fail to furnish proper payroll records when requested for the purpose of completing an audit. The Union shall have the right to remove all its members from the offending Employer provided that three (3) days notice of the intention to remove Bricklayers from the job is given to the Employer by the Union by certified mail. If such members are removed pursuant to this provision, they shall receive two

18

(2) days pay from the Employer. In the event an Employer does not permit and/or provide an audit of its books and records by this Agreement, the Employer, shall be liable for liquidated damages as provided by this Agreement and all other relief permitted by law.

In the event the Employer does not make timely payment of contributions to Bricklayers Fringe Benefit Funds required herein, it is agreed that the Employer shall be liable for the following liquidated damages: An additional payment of five (5%) percent of the amount owing, and, if the Employer is a corporation, interest at the per annum rate of ten (10%) percent of the amount owing or at the maximum legal rate, whichever is greater. If the Employer is not a corporation, interest shall be at the maximum legal rate. Furthermore, if an audit is required of the Employer's books and records and a deficiency in contributions is determined, which is not paid within seven (7) days after reasonable notice, the Employer agrees to pay as additional liquidation damages five (5%) percent of the amount owing, thereafter, in the sole discretion of the Trustees, the Employer's account is referred to legal counsel for collection, the Employer agrees to pay as, additional liquidation damages five (5%) percent of the amount owing as attorneys fees. If litigation is instituted by service of a summons, and complaint or participation in any insolvency proceeding of the Employer is required, the Employer agrees to pay as addi-

19

This is a copy printed from the IUBAC Document Management System.

tional liquidated damages five hundred ($500.00) Dollars to each of the Bricklayers Fringe Benefit Funds, or five (5%) percent of the amount owing, whichever amount shall be greater. The Employer acknowledges and understands that the above liquidated damages are cumulative and are required to protect the fiscal integrity of Bricklayers Fringe Benefit Funds. Where collection of payment is made pursuant to a judgement against the Employer, the Employer recognizes the Trustees' right to receive liquidated damages, interest, costs and attorneys' fees provided for pursuant to the civil enforcement provisions of the Employee Retirement Income Security Act, as amended. In the event the Employer does not make timely payment of contributions to Bricklayers Fringe Benefit Funds required herein, the Union shall have the right to remove all its members from the job, provided that three (3) days written notice of the intent to remove Bricklayers from the job is given to the Employer by the Union by Certified Mail.

Where payment is made or an audit is conducted pursuant to a judgement or court order, the Employer recognizes the right of the Trustees of Bricklayers Fringe Benefit Funds to have the court enter an order permanently enjoining the Employer and its agents, representatives, directors, officers, stockholders, successors and assigns, for the remining term of this Agreement from failing, refusing or neglecting to submit the required Employer Remittance

20

Reports and/or to pay the required contributions to Bricklayers Fringe Benefit Funds; and requiring the Employer to cooperate in an audit in accordance with the provision of this Agreement. The Employer represents and warrants that it will not raise any defense, counterclaim or offset to the Trustees' application for this order.

If an Employer becomes delinquent because of a failure to pay contributions to Bricklayers Fringe Benefit Funds by the twentieth (20th) day of the month following the month for which such contributions are due, such Employer will be required to make payments on a weekly basis thereafter until relieved of such obligation by the Union and the Delinquency Committee of the Trustees of the Bricklayers Fringe Benefit Funds.

In the event that the Union misuses any of the books or records procured from an Employer pursuant to this paragraph (c) or in the event that the Union utilizes any of these provisions for the sole purpose of abusing or harassing an Employer, the Arbitrator shall have the right to penalize the union by imposing a fine against it in an amount to be determined by the Arbitrator.

D. The Union shall have the right at any time during the term of this agreement and upon reasonable notice to the Employer to institute a "receipt" system for the payment of fringe benefit contributors.

E. Bonding of Contributors to Bricklayers Fringe Benefit

21

This is a copy printed from the IUBAC Document Management System.

Funds—No Bricklayers may work on my job unless the Employer shall have furnished the Trustees of the various Bricklayers Fringe Benefit Funds with a satisfactory surety bond guaranteeing payment of all contributions provided for in this Article III in this Agreement. The Trustees shall be empowered to require that the bond be in an amount equal to the highest amount owed by the Employer to the various Bricklayers Fringe Benefit Funds at any one time during the preceding three years, but in no event less than $40,000.00. In lieu of a bond or as a supplement to a bond, an Employer may, at the sole discretion and upon the sole consent of the Trustees of Bricklayers Fringe Benefit Funds, furnish cash and/or collateral alternatives in satisfaction of this bonding requirement sufficient to cover one (1) month fringe benefit contributions. The Trustees of the Bricklayers Fringe Benefit Funds shall have the right to request any Employer to increase the amount of its surety bond and/or cash and/or collateral alternatives whenever they deem it necessary for the protection of Bricklayers Fringe Benefit Funds. Each joint venturer shall furnish a new surely bond covering each joint venturer and the joint venture; or shall furnish a rider from each of their respective insurance carriers, confirming that their respective surety bonds protect Bricklayers Fringe Benefit Funds during the period of the Joint venture.

Employers who have posted the proper bond, as described herein Article III; Section 8E, shall be permitted to make con-

22

tributions to the Bricklayers Fringe Benefit Funds monthly rather that weekly on or before the twentieth (20th) of the month following. If an Employer becomes delinquent because of a failure to pay contributions by the twentieth (20th) day of the month following the month for which such contributions are due, such Employer will be required to make payments on a weekly basis thereafter until relieved of such obligation by the Union and the Delinquency Committee.

## Section 10. Delinquency Committee

The parties to this Agreement recognize the vital need to collect all Employer contributions payable to the Bricklayers Fringe Benefit Funds and have therefore included in this Agreement "the Delinquency Committee" which has been established by the Trustees of the Bricklayers Fringe Benefit Funds. The parties agree that the "Committee" is fully authorized to both establish and modify all rules, relations and procedures required for the collection of contributions. The committee is also authorized to enforce collections of delinquent accounts through legal process. All parties to this Agreement shall be obligated to cooperate fully with the Delinquency Committee for the purpose stated above.

## Section 11. Payment of Wages

A. Employers shall make payment of all wages due in

23

lawful currency. Payments shall be made in sealed envelopes and plainly marked showing Employer's name and address, printed or stamped, Bricklayer's name, hours worked, amount, earned and deductions required by law. The Employers or their representatives shall not be permitted to give any advance in wages to Bricklayers, nor shall be permitted to lend money to Bricklayers.

B. Wages shall be due and payable during working hours on Friday for work done up to quitting time of the preceding Tuesday. Should Friday be a bank holiday, wages shall be due and be payable during hours on Thursday for work done up to quitting time of the preceding Monday. On jobs where the stagger system is used the employer shall give due notice to those Bricklayers affected as to the time the paymaster will be at the job. If for any reason Bricklayers are not working on payday, the Employer shall make every reasonable effort to pay these Bricklayers before twelve o'clock noon. If the Employer finds that to pay off jobs on Friday is an undue hardship, upon request he shall be permitted to pay specified jobs on Thursday. The day designated as the first pay day in such instance shall be the prescribed pay day until the completion of the job.

C. Notwithstanding anything herein contained Employers shall have the right to make weekly payment of wages by check, provided:

1. all legal requirements are complied with;

24

2. Written notice by registered mail shall be given to the union of an election to pay by check;

3. payment shall be made by check bonded to guarantee against forgery;

4. checks shall be delivered to Bricklayers at least one day preceding a banking day; and

5. in the event a wage check is not honored by the bank on which drawn for any reason whatsoever, then the Bricklayer affected thereby shall receive an extra two days' pay for waiting time and such nonpayment shall be justification for withdrawal of Bricklayers and shall be an exception to the provisions of the Agreement prohibiting the withdrawal of Bricklayers.

D. Where Bricklayers are not on the job, for any reason for which the Employer is not responsible, when the paymaster is paying off the Bricklayers, they may be sent to the main office for their pay, but without allowance for the time spent in going to and from the office, but where the Bricklayers are not on the job because of any reason for which the Employer is responsible, they shall be allowed one (1) hour with pay in going to the office for their pay. Where Bricklayers are not paid on the specified pay day during working hours, they shall be paid single time for all waiting time at the rate of seven (7) hours per day not to exceed fourteen (14) hours.

E. When Bricklayers are to be discharged, they must be

25

notified during working hours, at least one-half (½) hour prior to discharge and must be paid on the job immediately upon discharge either in cash or by check. A violation of this rule entitles a Bricklayer to compensation at the rate of wager per hour set forth in Section 1.A. of this Article for the working time that elapses between the time of discharge and the time of receiving his money, provided the Bricklayer remains on the job or at the office during all working hours until he is paid. It is understood, however, that no waiting time claim in excess of fourteen (14) hours will be considered, nor shall a Bricklayer remain on the job for a longer time. Bricklayers must be given termination notice of the State of New York Department of Labor, Division Placement and Unemployment Insurance when discharged, or an equivalent notice acceptable to that division. If this notice cannot be given to the Bricklayer on the job at the time of discharge; the Employer may mail the notice the following business day to the Bricklayer and this shall be deemed substantial compliance.

Failure to furnish or mail such notice as herein provided shall entitle a Bricklayer to two (2) hours pay deemed to reimburse the Bricklayer as the agreed measure of loss.

F. All Bricklayers discharged between the hours of eight a.m. and twelve noon (8:00 a.m. & 12 p.m.), shall be paid until 12 o'clock noon on the date of discharge. All Bricklayers discharged between the hours of 1 p.m. and 4

p.m. shall be paid until 4 p.m. unless the lunch hour has been reduced to one-half (½) hour in accordance with Article II, Section I, in which event Bricklayers discharged between 12:30 p.m. and 3:30 p.m. shall be paid until 3:30 p.m. Upon discharge or layoff, the Bricklayer shall receive 30 paid minutes within which he may collect his tools, clothes, and other personal effects at the shanty. This does not apply to a layoff, nor does it apply to men not on the job at starting time. Whenever there is a rehiring following a layoff, Bricklayers who were employed at the time of the layoff, including Bricklayers who were absent from work on account of sickness, shall be entitled to preference in the rehiring, provided they are at the Job available for employment at the time of rehiring. Advance notification of such rehiring must be given to the Union.

G. When a Bricklayer who is working on the job reports for work at 8:00 a.m. or such other time as instructed and is not permitted to start work at such time for any reason, except causes beyond control of the Employer including but not limited to temperature or weather conditions, he shall be paid time for the entire afternoon provided he remains on the job and accepts such working time as is offered him that day. However, the Bricklayer shall not be required to remain on the job more than four (4) hours without working and such time shall not be paid to any Bricklayer instructed not to report for work. In order to minimize loss of time due to

26

27

This is a copy printed from the IUBAC Document Management System.

inclement weather the Employer agrees to provide reasonable protection against inclement weather provided it is practicable to furnish such protection. In the event of inclement weather there shall be, as far as practicable, rotation of Bricklayers for available work.

H. Should work be stopped for any cause beyond the control of either party to this Agreement, no claim for lapsed time shall be made for the time of the unavoidable cessation of work; and if the Bricklayers demand their wages for the working time due, these wages shall be paid within three (3) banking hours after the demand is made upon the Employer.

I. If a building is abandoned for any cause or if the mason contractor is defaulted, dismissed, or changed, and wages or contributions to Bricklayers Fringe Benefit funds on such building are unpaid, Bricklayers may refuse to work thereon until these wages or contributions to Bricklayers Fringe Benefit Funds are paid.

J. All Employees, at the termination of their employment, shall receive from the Employer the New York State Record of Employment Form 1-A within twenty-four (24) hours of their dismissal. If the Employer fails to provide such form within that period, then he must pay the Employee at the contract wage rate for all hours after such twenty-four (24) hours until the Form is issued, up to a maximum of two days pay.

28

## ARTICLE IV
### Condition of Employment

### Section 1. Job Site Conditions

A. Bricklayers who are knocked off by the Employer for the purpose of loading scaffolds must be paid for all such time lost. This shall not apply to sections of a floor which are not in readiness due to other trades. On steel skeleton structures outside scaffolds must be used throughout all outside walls, and on all exterior steel beams, covered with brickwork,

On all operations when a wall or partition reaches the height of five (5') feet to the nearest course, a scaffold must be erected for continuance of the wall or partition. The height of the scaffold shall be the height of a standard five (5') foot horse or jack without blocking. This does not apply where otherwise indicated. On all work where block units six (6") inches and over in thickness are used, Bricklayers shall work in pairs to set the top course before scaffolding is required.

Scaffolds shall be provided on the outside and on the inside of all exterior brick masonry walls, except in the following cases.

1. Where the thickness of the wall consists of a single masonry unit.
2. In the construction of parapet walls on skeleton construction where hanging platform type scaffolds have

29

This is a copy printed from the IUBAC Document Management System.

been used; and where an outside scaffold would encroach upon or overhang adjoining property.

B. Where ladders are used, there shall be at least two (2) properly built and secured ladders on each floor. They shall extend at least two (2') feet above the floor on which they land and the openings through which they pass shall not be less than two (2') feet by two (2') feet.

C. The line must not be raised more than one (1) course at a time, and no Bricklayer shall spread mortar, before the line has been called for, raised and tightened; however a twig brick can be raised one course before raising the line. It is agreed that the weights refer to the list of weights of manufacturers. A line must be used on all masonry Units in walls over (4') feet in length, and shall not be raised until every man working along the line has run out. The Foreman or Assistant Foreman (Deputies) shall not put up the line except if he is working on the wall and then only when he is carrying the lead. The Employer shall not be permitted at any time to request that the line be raised. On all buildings where block units are used two (2) Bricklayers working as a team shall be used placing blocks weighing forty (40) pounds or over or with a unit size of twelve (12") inches or over irrespective of weight. It is agreed that the weight of block units mentioned herein is subject to arbitration as requested by the Union.

D. Mortar tubs on outside scaffolds shall be raised

30

approximately eighteen (18") inches. Masonry materials to be used on the construction of a wall shall not be stacked higher than approximately four (4') feet above the working platform.

E. Bricklayers shall have a morning and afternoon coffee break. An employer may require the employees' coffee break to be taken at the job station.

F. Bricklayers shall not use a cell phone, either to make or receive calls, while working, except that the Shop Steward may use a cell phone to call the Union on matters within the scope of his Shop Steward duties. Cell phones may be used by bricklayers during the lunch period and on coffee breaks.

G. The Union and the Employers agree that the Labor-management Relations Committee shall meet to study safety measurers to insure the safety and protection of Bricklayers while employed at their trade.

### Section 2. Tools

Each Bricklayer shall provide himself with a kit of tools consisting of a trowel, concave, Joiner, brick hammer, hand hammer, level, plumb rule, bob line and chisel, for which a suitable tool house five (5) square feet minimum per man in size properly heated shall be provided for the exclusive use of the Bricklayers. When the foregoing provisions are made, an Employer of Bricklayers is only responsible for the loss

31

of clothing and tools due to the forcible entry or burning of the tool house and such liability shall be limited to a sum not to exceed $150.00 for a coat, $80.00 for shoes, $200.00 for a suit of clothes, $200.00 for tools and $100.00 for working clothes, including work shoes. If requested to the Employer, proof of loss shall be submitted to the Joint Arbitration Board which shall make adjustments. Lines on all walls must be supplied by the Employer.

Recognizing the fact that both parties are interested in safety, uniformity and public image of the unionized bricklaying industry, and the need to identify the union project, the parties agree that the Employer shall provide safety helmets appropriately marked and identified.

### Section 3. Elevator

Bricklayers shall be at their assigned stations ready to work at starting times. On building heights up to a maximum walking height provided by law or code standard (presently 100 feet of building height), the contractor shall provide and locate one (1) or more shanty, tool shed or a gang box, and the Bricklayers shall be required to be at such shanty, tool shed or gang box closest to work operations ready to work at starting times, and shall be allowed five (5) minutes at the regular quitting times.

On building heights up to the maximum wing height (now 100 feet), irrespective of the previous sentence, the Bricklayers shall in any event be required to be on the floor of work operations ready to work at starting times, and shall be allowed five (5) minutes at the regular quitting times.

On high rise structures, however, when the work reaches the maximum walking height as provided in the building code of the City of New York, an elevator shall be provided one-half ($\frac{1}{2}$) hour before starting time and after quitting time, and the Employer shall provide and locate a shanty, tool shed or a gang box on the floor or adjacent floor and the Bricklayers shall be required to be at the shanty closest to the work operations ready to work at starting times and shall be allowed five (5) minutes at the regular quitting times. The contractor and the union will need to approach particular job configurations with regard to practicality and efficiency.

### Section 4. Identification

Bricklayers on the job shall wear in plain sight, numbered badges (not to exceed one and one half (1½") inches in diameter) when requested to do so by the Employer, such badges shall be furnished without charge by the Employer.

### Section 5. Rebates Employers

Employers, Bricklayers or the agents of either shall not accept or give, directly or indirectly any rebate of wages, or give or accept gratuities.

32

33

## Section 6. Laws

No provisions of this agreement shall supercede any Municipal, State or Federal law which imposes more stringent requirements as to wages, hours of work, or as to safety or general working conditions than are imposed by this Agreement. Upon demand by the Union the Employer shall furnish evidence that he is complying with the laws on worker's compensation and other required federal and state insurance, etc.

## Section 7. Union Notification, Union Security, and Referrals

1. Union Notification— Each Employer shall be required to advise the Union two (2) days in advance of the commencement of any job. If the Employer fails to give such two (2) days notice, then he shall pay $250.00 liquidated damage for each such day.

2. Union Security— Membership in the Union shall be required as a condition of continued employment of all Bricklayers covered by this Agreement on the eighth (8th) day following the beginning of such employment, or the effective date of this Agreement, whichever is later.

3. Referral

A. The parties agree that an equal ratio shall be maintained (50/50) between the number of Bricklayers referred by the Union and the number employed directly by the

34

Employer. The parties further agree jointly to comply with the government requirements with regard to employment and hiring practices apart from the 50/50 ratio.

B. The Employer retains the right to reject for cause any Bricklayers referred by the Union. In the event of such rejection, the Employer shall immediately notify the Union which shall refer another Bricklayer to the Employer. This practice shall be repeated until the Employer retains a Bricklayer for employment.

C. Nothing contained herein shall be deemed to deprive the employer of the right to discharge any Bricklayer not required.

## ARTICLE V
### Strikes and Lockout

Except as herein otherwise provided for, the Union shall not order a strike against the Employer nor shall any number of Union Bricklayers leave the work of the Employer nor shall the Employer lock out any Bricklayers working under the jurisdiction of the Union, party to this Agreement.

Where any workers engaged on a construction job, including men who load materials in building supply yards within the region defined in Article I, and who unload at the point of construction, are not members of, or represented by, unions affiliated with the Building and Construction Trades Department of the AFL-CIO, the Union shall be entitled to withdraw Bricklayers from the Job without resorting to arbi-

35

This is a copy printed from the IUBAC Document Management System.

tration, and further, on condition that the Union withdraw Bricklayers from all Jobs where the same condition exists.

When the union investigation becomes convinced that the Bricklayers on any Job are being paid less than the rate of wages prescribed in this Agreement, they shall, provided that twenty-four (24) hours' written notice is given to the Employer, be entitled to withdraw the Bricklayers from such Job without first submitting the complaint to arbitration. The written notice shall give a definite and specific statement of the complaint on which the proposed action of the Union is based. Thereafter the Joint Arbitration Board shall consider the complaint as provided for in Article VIII of this Agreement. The parties to this Agreement agree that no damages of any kind or nature shall be awarded or allowed against the Union or any officer or member thereof by reason of the withdrawal of men from a job on which a complaint has been filed as aforesaid.

## ARTICLE VI
### Union Relationship
**Section 1. Shop Steward**

A. To effect the observance of this Agreement, each job shall have a Shop Steward appointed as follows: the second person employed shall be referred by the Union and designated as Shop Steward; however, the Foreman, for just cause, reserves the right under this Agreement as to the continued

36

employment of the Shop Steward upon written notice to the President of the Union specifying the cause for such action.

B. The Shop Steward shall determine all Bricklayers on the job are employed accordance with this Agreement. He shall see that the classification of trade as defined herein is observed and that all terms of this Agreement are compiled with. he shall retain possession of the key to the tool house and see that it is open in ample time at starting times, and securely locked at quitting times.

C. The Employer shall not interfere with the Shop Steward's performance of his duties as such which shall be performed with the least inconvenience to his Employer as possible. He is to work as a Bricklayer and not use his position as shop steward as an excuse to avoid performance of his duties as a Bricklayer. He shall be one (1) of the last two (2) Bricklayers on the operation including the Foreman.

**Section 2. Job Site Visits**

Union representatives shall not be interfered with, when visiting any operation where Bricklayers are employed.

**Section 3. Persons in Charge**

Bricklayers seeking employment on any Job of more than six (6) stories shall apply at a suitably located and safe place on the operation designated by the Employer, which place shall be sufficiently large to accommodate such number of

37

Bricklayers as may reasonably be expected to apply, but there shall be no limitation as to hours in the day when such applications may be made. Where there ar seven (7) Bricklayers employed on the job, one (1) of the seven (7) shall be a Foreman who shall no longer use the tools of the trade. All Foreman shall receive a weekly salary and shall be paid not less than $30.00 per day above the prescribed rate of this Agreement. All assistant Foreman (Deputies) shall receive a weekly salary and shall be paid not less than $15.00 per day above the prescribed rate of this Agreement.

The Employer shall pay on behalf of all Foreman and Assistant Foreman (Deputies) the regular rate of contributions on a thirty-five (35) hour weekly basis to Bricklayers Fringe Benefit Funds and Industry Funds, regardless of holidays as provided in Article II, Section 2.

One Assistant Foreman (Deputy) shall be allowed where there are less than ten (10) men, but a second Assistant Foreman (Deputy) shall not be allowed until the number of Bricklayers shall reach forty (40) and the third where there are sixty (60) Bricklayers employed, the only exception is to be where a job has more than one unit working at the same time, or where work is being done on different floors. If charges are preferred against a Foreman, his Employer shall be notified at once in writing as to the nature of the charges. If the charges are sustained at his trial, the penalty imposed shall not be enforced for two (2) weeks, and the Employer

38

shall have the right to have this matter discussed by the Joint Arbitration Board after the Union has rendered its decision. It is understood that such decision of the Union is not subject to arbitration hereunder.

Subject to the terms of this Agreement, nothing shall interfere with or abridge the right of the Employer to lay off or discharge or change the conditions of employment of any Bricklayer. The laying off of a Bricklayer is not unusual and shall not be considered an unfair practice.

### Section 4. Employment

It is hereby agreed that all Bricklayers shall be employed in accordance with this Agreement. If the Shop Steward be discharged for calling the attention of the Foreman to any violation of this Agreement, he shall be at once reinstated until the matter is brought before the Joint Arbitration Board and settled. All complaints arising between the parties involving the discharge of a Shop Steward shall be submitted to the Joint Arbitration Board for adjustment. It is agreed that pending the adjustment of the complaint, except where immediate reinstatement is required under this Section, the Union shall appoint an alternate Shop Steward and the job shall operate in status quo.

### Section 5. Schedule

The installation of fireproofing must be in progress

39

This is a copy printed from the IUBAC Document Management System.

before any bricklaying is begun on the top most story of any building in course of construction.

### Section 6. Preference

The Bricklayers employed upon the construction of the exterior walls shall be given preference on interior work.

### Section 7. Apprentices

A. There shall be a "Joint Apprenticeship and Training Committee" consisting of an equal number of Employer and Union Committeemen. The employers shall appoint two (2) employer Committeemen. The Building Contractors Association, Inc, shall appoint one (1) Employer Committeeman. The Union shall appoint three (3) Union Committeemen. The Employer Committeemen and the Union Committeemen shall be the same individuals designated as Trustees of the "Joint Apprenticeship and Training Fund."

B. All parties agree that all apprentices in the bricklayers trade shall be indentured to the Joint Apprenticeship and Training Committee.

C. In accordance with the Bureau of Apprentice Training of the State of New York, each Employer shall employ a ratio of one (1) apprentice to four (4) journeymen bricklayers on the job, when indentured apprentices are available and assigned to the Employer by the Joint Apprenticeship and Training Committee or authorized representative.

D. Improvers—The wage rate for Improvers will be determined jointly by the Union and the Employer at the time and job location that the Improver's status is first established.

E. Apprentice—The number of apprentices to be trained during the remainder of this Agreement will be determined by the Joint Apprenticeship and Training Committees.

Add a ratio for the first apprentice employed of one (1) apprentice to four (4) journeymen and further that any apprentices employed shall not be included in the count of bricklayers used (in Article VI, Section 3) with regard to the Foreman's use of the tools of the trade.

Should there be more apprentices than the remaining ratio of one (1) to four (4) journeymen can employ, then the parties shall meet to consider lowering the ratio in order to provide for more employment of apprentices.

Further, the Union shall institute an additional means of communication and job placement of apprentices, such as telegram system through the Union's office subject to the approval of the Joint Apprenticeship and Training Committee.

Wage Rates of Apprentices under this Agreement shall be modified as follows:

1-750 hours of work—50% of journeymen's rate.

751-1500 hours of work—60% of the journeymen's rate.

1501-2250 hours of work—70% of the journeymen's rate.

40

41

2251-3000 hours of work—80% of the journeymen's rate.
3001-3500 hours of work—90% of the journeymen's rate.
3501-4000 hours of work—95% of the journeymen's rate.
When masonry work is in progress, the apprentice shall be employed on such masonry work.

### Section 8. Labor

No labor shall be allowed upon any wall or pier to temper or spread mortar which shall be delivered in bulk. Said mortar must be spread with trowel by the Bricklayers.

## ARTICLE VII
*Work Included*

### Section 1. Construction

A. The Employer shall include in its work for a building, alteration or other form of construction all mason materials and Bricklayers' work including:

Brickwork—this shall include, but not be limited to, brick work with bricks made of clay, cement, slag, cinders, lime (and any combination thereof) and bricks made of glass.

Architectural terra-cotta (Setting and Cutting).
Faience.
Paving of floors (unit paving interior and exterior).
Installation of Concrete Block.
Installation of sills and coping on masonry walls.

Brickwork on damp-proofing system.
All fireproofing with terra-cotta and brick floor arches.
Precast concrete units for floor arches, slabs, partitions, furring, roof block.
Gypsum block, cinder blocks and lead units.
Caulking of window frames.
Precast or prefabricated masonry panels or components.
Erection and installation of precast or prefabricated masonry panels or components.
The "Threadlike System."
The "Moonwalk System."
The "Bloc Bond System."
All reinforcement built into or attached to reinforced masonry walls and anchors, such as seismic clips and anchors, and regardless of the method used, including screwing, bolting, welding, shooting, gluing and drilling.

Masonry siding (nail-on brick panels): Styrofoam insulation when applied to masonry.

B. Plastering and Cement Finishing when performed in the territory of mixed bricklayer Local Unions shall be under the jurisdiction of the Bricklayers Unions.

C. The building of sewers, telegraph or telephone conduits made of clay products shall be done by Bricklayers.

D. Where cork blocks, one and one-half (1½") inches or over in thickness, used for partitions, furring or vertical fining are set in mortar or other plastic materials, or when used

42

43

for floor slabs, one and one-half (1½") inches and over in thickness, laid in sand or cement, or other plastic material, the work of installing said cork blocks shall be done by Bricklayers.

E. The washing down and pointing of all bricklayers' work shall be done by Bricklayers on old and new buildings and regardless of the number of times required.

F. Where mortar is used to set, point or grout, units of light weight mineral building material (such as Zeprex) the work of installing said units shall be done by the Bricklayers.

G. All new block known as gravity wall or interlocking block laid with or without mortar or grout shall be the exclusive work of Bricklayers.

H. The erection, construction and installation of precast masonry panels or components or prefabricated masonry panels or components shall be the work of the Bricklayer.

I. Bricklayers work shall include, but not limited to the fitting, bedding, pointing; caulking, grouting, installation of gaskets, plumbing, aligning, leveling and anchoring including bolting or welding necessary to install the precast or prefabricated masonry panels or components.

J. Brick masonry shall also consist of, but not be limited to, the following work procedures and installation of the following materials:

1. The laying of brick made from any material in, under

44

or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water; in commercial and residential buildings, rolling mills, iron works, blast or smelter furnaces, lime for brick kilns; in mines or fortifications, and in all underground work, such as sewers, telegraph, electric and telephone conduits; including the installation of substitutes for brick such as all carbon materials, Karbate, Impervite or mixtures, all acid resistant materials, all terra-cotta and porcelain materials.

2. All cutting of joints, pointing, cleaning and cutting of brick or block walls, fire proofing (regardless of the method or material used), block arching, terra-cotta cutting and setting, the laying and cutting of all tile plaster, mineral, wool, cork blocks and glass masonry, or any substitute for the above materials, the laying of all pipe sewers of water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous material, burnt clay or cement, or any substance material used for the above purpose, the cutting, rubbing and grinding of all kinds of brick and the setting of all cut stone trimmings on brick buildings, and the preparation and erection of plastic, castables or any refractory materials.

3. Cleaning, grouting, pointing, and other work including

45

This is a copy printed from the IUBAC Document Management System.

the caulking of windows, necessary to achieve and complete the work under the foregoing categories; all waterproofing and black mastic waterproofing, silicone and/or substitutes sandwiched between masonry units in the interior of the wall.

4. All terra-cotta called unit tile regardless of method of installation; all quarry tile; split brick or quarry tile or similar material: The bedding, jointing, and pointing of the above materials shall be the work of the craft installing same.

5. All burnt clay, extruded cellular products regardless of trade name or method of installation when used as a veneer on structures; all clay products known as terra-cotta tile, unit tile, ceramic veneer and machine-made terra-cotta and like materials, regardless of the method of installation. Brick paving comes under Bricklayers' trade classification.

K. The Bricklayer shall perform the complete installation and related finish work of all Autoclaved Aerated Concrete Masonry Units (AACMU). These operations include, but are not limited to: the cutting, fitting and the applications of mortar and/or cementious materials used for the setting and bonding purposes as well as the actual laying of the AACMU block units into position. The routing, drilling, cutting and patching for all mechanical piping and openings. The preparation, assembly, selecting or staging of AACMU Panels, hooking on, drilling, cutting, installation of support angles or strut supports, fitting, bedding, setting, leveling, plumbing, aligning, fastening, anchoring (whether by bolt, clip, pin or weld), insulation, caulking, grouting, patching, cleaning, waterproofing and installation of all AACMU units. This also includes all work operations related to the installation and applications of all coating, covering and veneer systems (both exterior and interior) on all AACMU units. These work operations include, but are not limited to: preparation of walls, and the applications of any and all finish coating materials by any method (i.e. trowel on, machine, spray on, etc.) or any other device deemed necessary to produce the desired finish surface.

L. The complete installation, within the cavity wall or applied to masonry or other elements within the exterior wall or any other surface, of air barrier systems, combined air barrier systems and vapor barrier systems, multi-component air barrier systems, vapor transfusable air barrier systems and other engineered air barrier systems designed to conserve energy consumption and provide moisture protection on buildings and structures shall be the work of the members of the IU BAC. The materials and methods shall include but shall not be limited to the following:

Sheet rubberized asphalt membranes (peel and stick), fluid applied materials (spray, brush, roller or trowel-applied), spray-applied polyurethane foam, smooth surface roofing

46

47

This is a copy printed from the IUBAC Document Management System.

membranes, modified bituminous self-adhering membranes, modified bituminous torch grade applied membranes, urethane foam, trowel-applied rubber-based adhesives, spray-applied rubber-based adhesive, plastic compounds, non-soldered sheet metal, foil-faced urethane insulation, all sealants and taping of joints in the back-up system.

M. This Agreement covers all work assignments of the following work:

1. Rubble work, rough cellar masonry, dry masonry walls and slopes.
2. Broken range and Random and coursed ashlar.
3. Setting all rubble, broken ashlar and cut stone and Precast Slabs, and Artificial Stone Work.
4. Setting and cutting bluestone flagging and slate flagging, or any other type of flagging called by any other trade name.
5. Setting of cement blocks below grade and cess pools.
6. Building of all jetties, break waters, Rip-Rap.
7. all flagstone of interior of buildings.

N. Bricklayer work shall include such other work as the International Union may from time to time determine.

O. Bricklayers shall also continue to do all of the work which they have performed in the past.

**Section 2. Cutting**

A. The cutting of all Bricklayers' work shall be done by

48

Bricklayers. Where a wetsaw is used for cutting, the Employer shall provide a pair of goggles, rubber gloves, an apron and rubber boots. No drycutting of masonry products shall be performed on scaffolds, where Bricklayers are working, except in the circumstances set forth in this Section 2, subparagraphs B through F.

B. Where pneumatic guns or, other mechanical devices are used, the Bricklayers shall cut all beam holes; chases; toothing; and all openings in walls of any thickness in Bricklayers' work. Where mechanical devices are used for cutting out of Bricklayers' work, the cutting of brick or terra-cotta, the Bricklayers employed thereon must be selected from those already employed on the operation.

C. If any bricks have to be cut on the building, this cutting shall be done by Bricklayers regardless of the means, apparatus, equipment or tools used.

D. Where cutting machines are used to cut terra-cotta, or brick-tile, the Employer shall furnish an industry standard regulation respiratory mask to cover the mouth and nose and also furnish to the Bricklayer that is working on the machine a pair of goggles. All portable cutting machines which are used by Bricklayers to cut terra-cotta brick or brick-tile are to be furnished with some mechanical device to draw the dust away from the Bricklayers at the machine. Bricklayers operating cutting machines or where time would be needed for the purpose of cleaning up shall be allowed a reasonable

49

time for the purpose of washing up. The last sentence is to take care of those Bricklayers employed on extraordinarily dirty work (not covered under cutting machines) so that they may take care of personal cleanliness.

E. If the jambs of an opening have to be rebuilt, the cutting out of the toothing for bonding the new work to the old work shall be done by Bricklayers.

F. The Employer may sublet the caulking of windows and paving of floors (unit paving, interior and exterior) as mentioned in Section 1 hereof when the subcontractor is a party to an Agreement with the Bricklayers' Union and on condition that the caulking is sublet before the exterior walls are completed.

## Section 3. Panelization

A. This agreement covers all work assignments in the preassembly and complete installation of all exterior, and interior artificial and natural Masonry products and associated items of any size or dimension whether set individually or in pre-assembled panels which may have metal or concrete backing, whether set with cement mortar, high strength adhesives or secured by bolting or welding to plates set in all types of concrete are attached to steel frame structures whether set by hand or with any type of mechanical systems.

B. Pre-assembly work assignments shall include, but not be limited to, the preparations of steel frames or precast con-

crete back up panels, the drilling of holes, cutting, fitting and fastening of artificial and natural product units to steel frames or back up precast by bolts, clip anchors, pins, including any welding as well as the complete application or installation of insulating, caulking and/or waterproofing materials. Employee wage and contribution rates and conditions of employment for preassembly work shall be negotiated separately between the Union and the Employer.

C. Installation work assignments shall include, but not be limited to, unleading, selecting or shaking out of artificial and natural masonry products for erection, hooking on, signaling, laying out, cutting, fitting, bedding, landing, setting, leveling, plumbing, aligning, anchoring, installation of any steel clips, relief or support angles as well as the installation of metal grid or strut stone supports (including bolting and/or welding); grouting, patching, cleaning, and installation of gaskets or packing and caulking.

D. On panelization work, eight (8) hours' work per day shall constitute a day's work; Forty (40) hours' work per week, Monday through Friday inclusive, shall constitute a week's work. Normal starting time shall be 8:00 a.m. Normal quitting time shall be 4:30 p.m. with a thirty (30) minutes unpaid lunch brake occurring in the middle of the shift. Normal starting and quitting time may be changed by mutual consent of the Employer and the union. Shift work may be scheduled if required. When more than one shift is required; employees

50

51

This is a copy printed from the IUBAC Document Management System.

working the shift shall receive nine hours pay for eight hours work.

### Section 4. Contracting

A. The Employer shall not directly or indirectly let solely the labor services required for any contract of such member. No employer shall sublet or accept a contract or subcontract for masonry work solely unless such contract or subcontract embraces all interior and exterior masonry work for the building or other form of construction involved (except the building of isolated stacks, boiler work, Guantavino arches, or precast units for floor arches including the furnishing of all materials incidental thereto). It is recognized, however, that this type of work is Bricklayers' work.

B. The Employer accepting such contract or subcontract solely for mason work must perform all such work with his own Bricklayers and such contract or subcontract shall not be sublet. However, an Employer having a general contract may sublet the masonry work to a contractor who is signatory to an Agreement with the Union. Notice of the subletting of masonry on any project shall be given to the Union before any Bricklayers are employed on such project. Such notice shall give the location of the project, name and address of the Owner, Contractor and Subcontractor.

C. Any Employer signatory to this Agreement subletting work described in Article VII of this Agreement hereby

52

guarantees contributions owed by such subcontractor to the Bricklayers Fringe Benefit Funds as required by this Agreement for work performed by the subcontractor under its contract with the Employer. In the event the subcontractor fails to make the required contributions to Bricklayers Fringe Benefit Funds, the Employer agrees to pay the contributions upon demand by the Bricklayers Fringe Benefit Funds, together with the liquidated wages, interest, costs, or fees for which its subcontractor may be liable under this Agreement.

D. 1. The Employer must not subcontract bargaining unit work unless the subcontractor receiving the subcontract has an agreement with the Union.

2. The Employer shall furnish to the Bricklayers Fringe Benefit Funds a copy of any document received from the subcontractor to the effect that the subcontractor has paid fringe benefit contributions to the Funds.

3. The Employer shall contact Bricklayer Fringe Benefit Funds to ascertain whether the subcontractor has made all required contributions to the Funds before the Employer makes final payment to the subcontractor.

4. The Employer shall promptly notify the Bricklayers Fringe Benefit Funds of any bond furnished by the subcontractor or the Employer that may be a source of payment of any delinquency.

53

## ARTICLE VIII
### *Miscellaneous*

#### Section 1. Severability

It is further agreed by and between the parties hereto that if any Federal or State Court shall at any time decide that any clause or clauses of this Agreement is, or are, void or illegal, such decision shall not invalidate the other portions of this Agreement; but such clause or clauses shall be stricken out and the remaining portions of this Agreement shall be considered binding between the parties hereto.

Any provisions of this Agreement hereinabove mentioned which provide for security or employment in a manner and to an extent prohibited by any law or the determination of any Governmental Board Agency, shall be and hereby is of no force or effect during the term of any such prohibition. It is agreed that there shall be no discrimination against any Bricklayer or prospective Bricklayer in violation of law. It is understood and agreed, however, that is any of the provisions of this Agreement which are hereby declared to be of no force or effect because of restrictions imposed by law is or are determined either by Act of Congress or other legislative enactment or by a decision of the Court of highest recourse to be legal or permissible, then any such provision of this Agreement shall immediately become and remain effective during the remainder of the term of this Agreement. The Union reserves the right to renegotiate any of the provisions of this Agreement which maybe of no force or effect.

#### Section 2. Six Hour Day

In the event of substantial unemployment among Bricklayers, the parties agree to discuss the six (6) hour day.

#### Section 3. Coverage of Agreement

If an Employer covered by this Agreement or any such owner or principal forms or acquires by purchase, merger or otherwise an interest, whether by ownership, stock, equitable or managerial, in another company performing bargaining unit work within this jurisdiction, this Agreement shall cover such other operation and such other bargaining unit Bricklayers shall be considered an accretion to the bargaining unit.

#### Section 4. Work Preservation

A. In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners

54

55

This is a copy printed from the IUBAC Document Management System.

or stockholders (exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

B. All charges of violations of paragraph (A) of this Section 4 shall be considered as a dispute under the Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in the Agreement. As a remedy for violations of this Section 4, the arbitrator (or arbitration body) provided for in the Agreement is empowered, at the request of the Union, to require an Employer to:

1. Pay to affected employees covered by the Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as a result of the violations; and

2. Pay into the affected joint trust funds established under the Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provisions for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this section; nor does it make the same or other remedies unavailable to the Union for violations of other provisions of the Agreement.

C. If, as a result of violations of this Section, it is neces-

sary for the Union and/or trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with paragraph (B) above, or to defend an action which seeks to vacate such award, the Employer shall pay any accountants and attorney's fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of such court action.

## Section 5. Dates

The Agreement is effective for the period commencing July 1, 2005 and shall terminate on June 30, 2008.

## Section 6. Retroactivity

It is mutually agreed that all wages, contributions to Bricklayers Fringe Benefit Funds and Industry Funds and conditions provided for in the Agreement shall be retroactive to July 1, 2005.

## Section 7. Supercession

In the event the Employer has signed or become party to another collective bargaining agreement covering the same work in the same geographic area, this agreement shall supercede the other one.

## Section 8. Successors

The Agreement shall be binding upon and shall insure to

This is a copy printed from the IUBAC Document Management System.

the benefit of each party hereto, its successors and assigns, and any successor thereto resulting from a merger, consolidation or other organization or restructuring.

## ARTICLE IX
### *Arbitration*

**Section 1.**

In the event of any dispute with reference to the interpretation, application or breach of any of the terms contained in this Agreement, the matter will be taken up initially by a Joint Arbitration Board, which shall consist of representatives of the Union and the Employer. If the parties are unable to achieve a mutually satisfactory resolution within seven (7) business days thereafter, the matter shall be submitted in writing for determination by George Nicolau, Esq. for final and binding arbitration. Mr. Nicolau, however, will not determine cases involving a collection of delinquent contributions to the Bricklayers Fringe Benefit Funds. The Arbitrator shall be prohibited from changing any of the terms and conditions of this Agreement during its term.

## ARTICLE X
### *Renewal*

**Section 1.**

The Agreement shall be deemed to be, and shall be automatically extended and renewed from year to year by and

58

between the parties hereto for further one (1) year terms upon all of the above terms, conditions and covenants, unless either party gives written notice to the other not less than sixty (60) calendar days and not more than ninety (90) days prior to the then expiration date of the Agreement of its desire to amend, change or terminate the Agreement on its expiration date. In the event such notice is given, the parties shall begin the negotiations within forty-five (45) calendar days. If negotiations are not completed prior to the expiration date, the Agreement shall terminate unless extended by mutual agreement of the parties.

**Section 2.**

All notices, demands and other communications which are required to be or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person or three (3) days after dispatch by certified mail, postage paid, return receipt requested, to the party to whom the same is so given or made, if to the Union, addressed to Bricklayers and Allied Craftworkers Local 1, 4 Court Square, Long Island City, New York 11101; and if to the Employer, addressed to the Employer at the corporate address set forth in the Agreement, or at such other address as any party may specify by notice to all other parties, given as aforesaid.

59

## ARTICLE XI
### *Signature*

The individual signing on behalf of the Employer, hereby affixes his signature, in a dual capacity both on behalf and on behalf of the Employer, and represents by his signature has authority to bind himself, the Employer or Firm and the principals and members thereof. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided for in the Agreement.

Employer_____

Signature _____Date _____

Name (Print) _____

Title (Print) _____

Corporate Address _____

_____

Telephone _____

Federal I.D. # _____

Individual Address _____

Telephone _____

S.S. _____

Bricklayers and Allied Craftworkers
Local No. 1, New York

By: _____Date _____

Santo Lanzafame, President

By: _____Date _____

Jeremiah Sullivan, Secretary-Treasurer

60

This is a copy printed from the IUBAC Document Management System.



```
410585      0001 NY 1
CONVENTIONAL STONE
SERVICES CORP
```

*New*

## ARTICLE XI
### Signature

The individual signing on behalf of the Employer, hereby affixes his signature, in a dual capacity both on behalf and on behalf of the Employer, and represents by his signature has authority to bind himself, the Employer or Firm and the principals and members thereof. The person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided for in the Agreement.

Employer CoNvENTioNal STone Services corp
Signature _____ Date 7/17/06
Name (Print) AlAN Cavaliere
Title (Print) Presiont
Corporate Address 1540 w ElizAbeth ave.
LiNDEN N.J. 07036
Telephone 908-862-3940
Federal I.D. # 20-4783453
Individual Address 84 wood Stone RiD Pickum
Telephone 646-522-3462 NJ
S.S. 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

Bricklayers and Allied Craftworkers
Local No. 1, New York
By: _____ Date 7-19-06
Santo Lanzafame, President

By: _____ Date 7-17-06
Jeremiah Sullivan, Secretary-Treasurer

60

This is a copy of an original printed from the EMC System.

K -1008
HHK

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|

JOHN FLYNN, et al.

*11001*

CONVENTIONAL STONE SERVICES CORP.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

11001

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006

Case: 1:08-cv-01008
Assigned To : Kennedy, Henry H.
Assign. Date : 6/13/2008
Description: Labor-ERISA

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U S Government
   Plaintiff

◉ 3 Federal Question
   (U.S  Government Not a Party)

○ 2 U.S. Government
   Defendant

○ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)  **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A.  Antitrust**

☐ 410 Antitrust

○ **B.  Personal Injury/
   Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.  Administrative Agency
   Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
   Administrative Agency is Involved)

○ **D.  Temporary Restraining
   Order/Preliminary
   Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

○ **E.  General Civil (Other)**        OR        ○ **F.  Pro Se General Civil**

**Real Property**
☐ 210  Land Condemnation
☐ 220  Foreclosure
☐ 230  Rent, Lease & Ejectment
☐ 240  Torts to Land
☐ 245  Tort Product Liability
☐ 290  All Other Real Property

**Personal Property**
☐ 370  Other Fraud
☐ 371  Truth in Lending
☐ 380  Other Personal Property Damage
☐ 385  Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or
   defendant
☐ 871 IRS-Third Party 26
   USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure
   of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
   Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
   Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
   Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
   Exchange
☐ 875 Customer Challenge 12 USC
   3410
☐ 900 Appeal of fee determination
   under equal access to Justice
☐ 950 Constitutionality of State
   Statutes
☐ 890 Other Statutory Actions (if
   not administrative agency
   review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ⊗ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>⊗ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊗ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29. U.S. 1132 - ERISA

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** [ ] Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒ If yes, please complete related case form

DATE _Jul 12, 2008_ / _13_   **SIGNATURE OF ATTORNEY OF RECORD** _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence. Use 11001 to indicate plaintiff is resident of Washington, D.C., 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States

III.    CITIZENSHIP OF PRINCIPAL PARTIES This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II

IV.    CASE ASSIGNMENT AND NATURE OF SUIT. The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause

VIII.  RELATED CASES, IF ANY. If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.